**13 CIV 1883**

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
488 Madison Avenue, Suite 1100
New York, New York 10022
Phone: (212) 286-1425; Fax: (646) 688-3078

RECEIVED
MAR 2 1 2013
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HASSAN MOUSTAFA, and ABUBAKAR          :
ULABASAMURA, Individually and on       :
Behalf of All Other Persons Similarly Situated, :
                                       :
                            Plaintiff,  :
                                       :
        -against-                      :
                                       :
COMPASS GROUP USA, INC., STEVE         :
SANTANGELO, EMOND MANLEY,              :
and JOHN DOES # 1-10,                  :
                                       :
                            Defendants. :
------------------------------------------------------------X

ECF

13 Civ. _____

**COMPLAINT AND
JURY DEMAND**

Plaintiffs HAASSAN MOUSTAFA and ABUBAKAR ULABASAMURA ("Plaintiffs"),

individually and as class representatives of other employees similarly situated, by and through

their attorney, complain and allege for their compliant against COMPASS GROUP USA, INC.,

STEVE SANTANGELO, EMOND MANLEY, and John Does #1-10 (together "Defendants") as

follows:

## NATURE OF ACTION

1.      This is an action seeking recovery of unpaid hourly wages and overtime wages on

behalf of Plaintiffs and similar employees who worked as food service employees for

Defendants.  Plaintiffs worked in excess of 40 hours per week, and were not paid time and one

half their regular hourly rate for all their hours worked over 40 in a week and also were not paid

for all their hours worked.

2.     Plaintiffs allege on behalf of themselves and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 (b), that they are: (i) entitled to unpaid wages from Defendants for work for which they did not receive overtime wages as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*

3.     Plaintiffs further complain on behalf of themselves, and a class of other similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendants, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations and the New York common law.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, this Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

7.     Plaintiff HASSAN MOUSTAFA at all relevant times has been an adult individual, residing in Queens County, New York.

8.     Plaintiff ABUBAKAR ULABASAMURA at all relevant times has been an adult

2

individual, residing in New York County, New York.

9.     Upon information and belief, Defendant, COMPASS GROUP USA, INC. ("Compass"), is a New York corporation doing business throughout New York City, including the Southern District of New York.

10.    Upon information and belief, Defendant Compass, is a regional contract dining service company, operating onsite corporate and leisure dining facilities throughout New York, including a dining facility located at Barclays Capital, 745 7th Avenue, New York, New York 10019, New York County ("Barclays Capital Location").

11.    Upon information and belief, Defendant STEVE SANTANGELO ("Santangelo") is an Executive Chef employed by Compass at the Barclays Capital Location, and at relevant times was the direct supervisor of the Plaintiffs, and controlled the day to day operations and management of Compass and jointly employed Plaintiffs and other similarly situated employees.

12.    Upon information and belief, Defendant EMOND MANLEY ("Manley") is a general manager employed by Compass at the Barclays Capital Location, and operates and/or controls the day to day operations and management of Compass and jointly employed Plaintiffs, and other similarly situated employees, at all relevant times.

13.    Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of Defendants, whose identities are unknown at this time and who participated in the day-to-day operations of Defendants and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law § 2 and the regulations thereunder, and are jointly and severally liable with Defendants.

14.     Each Defendant, including but not limited to Santangelo and Manley, either directly or indirectly, has hired and fired Plaintiffs and other similar employees; controlled the work schedule and conditions of employment of Plaintiffs and similar employees; determined the rate and method of payments of Plaintiffs and similar employees; and kept at least some records regarding the employment of Plaintiffs and similar employees.

## COLLECTIVE ACTION ALLEGATIONS

15.     Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants at any time since March 21, 2010 to the entry of judgment in this case (the "Collective Action Period") (cause of action arising out of a willful violation), who were non-exempt employees within the meaning of the FLSA and who were not paid for all of their hours worked, and were not paid overtime wages (the "Collective Action Members").

16.     This collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

17.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

18.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

19.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

a.  whether the Defendants employed the Collective Action members within the meaning of the FLSA;

b.  whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;

c.  what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.  whether Defendants failed to pay the Collective Action Members, overtime wages for hours worked over 40 in a workweek, in violation of the FLSA and the regulations promulgated thereunder;

e.  whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

f.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

g.  whether Defendants should be enjoined from such violations of the FLSA in the future.

20.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

21.  Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

22.  Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by Defendants at any time since March 21, 2007, to the entry of judgment in this case (the "Class Period"), and who were non-exempt employees within the meaning of the New York Labor Law and have not been paid overtime wages and/or hourly wages for all hours worked by them in violation of the New York Labor Law, and the New York common law (the "Class").

23.  The persons in the Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there at least 40 members of Class during the Class Period.

24.  The claims of Plaintiffs are typical of the claims of the Class, and a class action is

superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

25.     The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

26.     Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law and class action litigation.

27.     Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

28.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    a.  whether the Defendants employed the members of the Class within the meaning of the New York Labor Law;

    b.  whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

    c.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

    d.  whether Defendants failed and/or refused to pay the members of the Class, overtime wages, and/or hourly wages for all hours worked by them, within the meaning of the New York Labor Law;

7

e. whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, interest, costs and disbursements and attorneys' fees; and

f. whether the Defendants should be enjoined from such violations of the New York Labor Law in the future.

## STATEMENT OF FACTS

29. Plaintiffs worked as food service employees for Defendants, in excess of 40 hours per week, and were at all times paid at their straight time rate for all hours for which Defendants gave them credit, and were not compensated at time and one half their regular rate of pay for all hours worked in excess of forty hour per workweek.

30. Defendant Compass is a regional contract dining service company, operating onsite corporate and leisure dining facilities throughout New York, including a dining facility located at Barclays Capital, 745 7th Avenue, New York, New York 10019, New York County ("Barclays Capital Location" or "Barclays Capital").

31. At all relevant times, Plaintiffs worked for Defendants at the Barclays Capital Location.

Hassan Moustafa:

32. Plaintiff Moustafa was employed full time by COMPASS GROUP USA, INC. ("Compass"), STEVE SANTANGELO ("Santangelo"), EMOND MANLEY ("Manley"), (collectively "Defendants"), as a cook for a number of years, from about February 2005 until the present.

8

33.     From the end of December 2000 to February 2005, Moustafa was employed by Thompson Hospitality Services LLC, which, upon information and belief, is a partner of Compass Group USA, Inc.

34.     From February 2005 to about February 3, 2012, Moustafa was properly compensated for all of his hours worked, Moustafa took paid vacation, and Moustafa was compensated for accrued sick days.

35.     From about February 3, 2012 to the present (the "Moustafa time period"), Moustafa generally worked more than 40 hours each week, and Moustafa was (1) not paid for all of his hours worked, (2) not paid overtime compensation at rates not less than one and one-half times his regular rate of pay for all his hours worked in excess of forty (40) hours per workweek, and (3) not paid accrued vacation time or sick time.

36.     When Moustafa was hired, Moustafa was told that his agreed upon hourly pay rate included paid vacation days, and sick days, which both would be paid at the end of the year if accrued and not used.

37.     From December 2000 through the end of 2011, Moustafa was able to take paid vacation, and Moustafa was paid for accrued sick days.

38.     After 2011, during the Moustafa time period, Moustafa was not allowed to take vacation leave and did not use any sick days, and Moustafa was not paid for this unused vacation time or sick time.

39.     During the Moustafa time period, Defendants operated, and continue to operate, a food service management, and catering company.

40.     As cook, Moustafa was responsible for the "Beans and Grains" station, the "Antipasta" station, the "Wellness Concepts" station, two "Executive Pantry" stations, the "Meal Deal" station, and Catering.

41.     During the Moustafa time period, Moustafa generally worked from about 7:00 a.m. to 6:00 p.m., and sometimes later, Monday through Friday.

42.     During the Moustafa time period, Moustafa was required to and continues to be required to swipe in and out of the building.

43.     During the Moustafa time period, Moustafa spent over 90% of his time cooking and preparing food, including but not limited to vegetables, tofu, pastas, rice, beans, and fish.

44.     During the Moustafa time period, Moustafa also helped to prepare recipes for the menus.

45.     The Antipasta station and the Beans and Grains station each feed 350-400 people per day.

46.     The Executive Pantry stations each feed about an additional 150 people per day.

47.     The Wellness Concept station feeds an additional 100 people.

48.     The Meal Deal station feeds about an additional 100 people a day.

49.     Additionally, Moustafa feeds about 30-100 people through Catering, each day.

50.     During the Moustafa time period, Moustafa was not allowed to take a vacation, and Moustafa never received payment for his unused vacation time, or accrued sick time.

51.     When Moustafa complained about not receiving vacation, Moustafa was told by Defendants that Moustafa could not take vacation because there was no replacement employee who could replace him during his vacation.

52.   On or about February 2012 until about July 2012, Executive Chef Steve Santangelo ("Santangelo") became Moustafa's supervisor.

53.   Approximately one week after Defendant Santangelo became Moustafa's supervisor, Defendants stopped compensating Moustafa for all of his hours worked, and instead paid him for only 40 hours of straight time a week.

54.   In about March 2012, after not being paid overtime wages for a few weeks, Moustafa complained to Santangelo about not being paid for all of his hours worked, and about not being compensated at time and one half for all of his hours worked over 40 in a workweek ("overtime wages").

55.   In response to Moustafa's complaints, Santangelo stated that Defendants refused to pay any overtime wages.

56.   Moustafa explained to Santangelo that Moustafa could not complete his daily tasks in 8 hours, and that Moustafa either needed help so he could go home after working 8 hours, or Moustafa needed to be properly paid overtime wages.

57.   Santangelo responded to Moustafa's complaints by telling him to stop complaining and work or Moustafa would be terminated.

58.   Moustafa then complained to his general manager, Defendant Emond Manley ("Manley") about not being compensated for all of his hours worked, not being paid overtime wages, and not being allowed to take any vacation.

59.   In response, Manley stated that new rules were put in to place.

60.   Under the new rules, Defendants did not pay any overtime wages, unless there was a specific, special circumstance which permitted overtime hours to be approved.

61. Manley also stated that Defendants required Moustafa to complete all of his daily tasks or Moustafa would be terminated.

62. Therefore, under threat of being terminated, Moustafa continued, and still continues, to work about 11 hours a day, from 7:00 a.m. to 6:00 p.m., because Moustafa needs to get all of his work done and it cannot be completed in 8 hours.

63. Additionally, Moustafa continues to work without receiving wages, including overtime wages, for all of his hours worked because Moustafa has bills, and a family to feed and maintain.

64. Furthermore, Moustafa knows that he will be terminated if he does not complete all of his daily tasks.

65. Moustafa works efficiently during each day and generally does not take any meal breaks.

66. Moustafa's daily duties and responsibilities account for all of the hours Moustafa worked and now works.

67. In or around early July 2012, a new Executive Chef named John Nunziata ("Nunziata") replaced Santangelo.

68. Moustafa explained to Nunziata all of his duties and daily responsibilities and tasks.

69. Additionally, Moustafa complained to Nunziata about not receiving payment for all of his hours worked, and not being paid any overtime wages.

70. Moustafa stated to Nunziata that his daily responsibilities and tasks required him to work longer hours than his work schedule.

12

71.     Nunziata stated that he had been instructed by Defendant Manley to make sure Moustafa completed his daily tasks before he left for the day regardless of the amount of hours he had to work. Moustafa tried and continues to try to complete all of his tasks within the daily 8 hours that Moustafa is scheduled to work.

72.     However, Moustafa was, and continues to be unable to get his job done in 8 hours per day based on his extensive responsibilities which remained the same.

73.     During the Moustafa time period, Moustafa's job responsibilities did not require any independent judgment, and Moustafa did not have the power to hire or fire employees.

74.     During the Moustafa time period, there were at least 40 other food service employees who did similar work as Moustafa and also had no power to hire or fire employees.

75.     There is high turnover rate applicable to food service employees as most of the employees stay employed for only a few months.

76.     Upon information and belief, there are at least 40 other food service employees employed by Defendants during the last six years, who worked more than forty (40) hours in a workweek, and were not paid for all of their hours worked, and did not receive time and one half for their hours worked over forty (40) in a workweek.

77.     During the Moustafa time period, Moustafa and these other similar food service employees worked for Defendants, but were not paid for all of their hours worked, and were not paid any overtime pay and were not paid for all their unused vacation days and/or sick days.

78.     Moustafa knows that others like him were not paid for all of their hours worked, because Moustafa spoke with similar employees, including but not limited to Abubakar Ulabasamura, Frank Rivela, and Mark Ines, who all complained that they had not been paid for all their hours worked and had not been paid for all their vacation days and/or sick days.

79. Throughout the Moustafa time period, Defendants have likewise employed other individuals, like Moustafa, in positions as food service employees.

80. Throughout the Moustafa time period, such individuals have worked long hours for Defendants, yet the Defendants have likewise failed to pay them wages for all hours worked, and overtime wages for all hours worked over 40 in a workweek and has also failed to paid them for unused vacation time and/or sick time.

Abubakar Ulabasamura:

81. Plaintiff Ulabasamura was employed full time by Defendants as a line cook for a number of years, from about May 4, 2004 until the present.

82. From about May 4, 2004 to about April, 2010 and then from about February 2012 until the present (collectively the "time Ulabasamura period") Ulabasamura generally worked more than 40 hours each week and was not paid for all his hours worked and was not paid time and one half for all his hours worked over 40 hours in a week ("overtime wages").

83. During the Ulabasamura time period, Ulabasamura was (1) not paid overtime compensation at rates not less than one and one-half times his regular rate of pay for all hours worked in excess of forty (40) hours per workweek, and (2) not paid wages for all of his hours worked.

84. When Ulabasamura was hired, Ulabasamura was told that his agreed upon hourly pay rate included paid vacation days, and paid accrued sick days.

85. During the Ulabasamura time period, Ulabasamura was never paid for any vacation days and was not permitted to take a vacation.

86. During the Ulabasamura time period, Defendants operated, and continues to operate, a food service management, and catering company.

14

87.     In about February 2005, Ulabasamura was promoted to global cook in the kitchen.

88.     As global cook Ulabasamura was responsible for the "Global Station" and the "Executive Pantry," and Ulabasamura also contributed to the breakfast preparation.

89.     During the Ulabasamura time period, Ulabasamura generally worked from about 6:00 a.m. to 5:00 p.m., and sometimes later, Monday through Friday.

90.     During the Ulabasamura time period, Ulabasamura spent over 90% of his time cooking and preparing food, including but not limited to chicken, beef, pork, lamb and fish.

91.     During the Ulabasamura time period, Ulabasamura also helped to prepare recipes for the menus.

92.     The Global Station feeds 350-400 people per day excluding the Executive Pantry, which feeds about an additional 100 people.

93.     Ulabasamura has been doing this job since 2005, when Ulabasamura was promised a promotion and better salary upon review by Executive Chef Sean Wilson and Molly O'Donelly.

94.     In 2010, new executives took over Defendants account at Barclays Capital.

95.     Ulabasamura explained to his new boss, Rosario Baudoly ("Baudoly"), his responsibilities of the Global Station and Executive Pantry.

96.     Additionally, Ulabasamura explained to Baudoly that Ulabasamura had never been paid for all hours that Ulabasamura had worked, and complained about not being paid proper wages.

97.     Ulabasamura further complained to Baudoly that Ulabasamura never received a review, and therefore Ulabasamura was never considered for the executive chef position, which had been promised to him.

15

98.   In response to Ulabasamura's complaints, Baudoly stated that Ulabasamura would start to be compensated appropriately for all the hours that Ulabasamura worked going forward, and as for the review, Baudoly would have to discuss that with the higher ups and update Ulabasamura when this was done.

99.   Ulabasamura was paid properly after April 2010 by Baudoly until Baudoly left in about February 2012.

100.   From about April 2010 to about February 2012, Ulabasamura was properly compensated for all of his hours worked, and Ulabasamura was also able to take paid vacation.

101.   Prior to this time from 2005 to 2009, Ulabasamura's vacation requests had always been denied, because Defendants stated that there was no replacement employee who could replace Ulabasamura during his vacation.

102.   Ulabasamura was never paid for this vacation time.

103.   In about early February 2012, Baudoly was replaced by a new manager, Steve Santangelo ("Santangelo").

104.   Ulabasamura's new boss was then Defendant Steve Santangelo. .

105.   Ulabasamura continued to work his general schedule of 6:00 a.m. to about 5:00 p.m. but was not paid for all his hours worked.

106.   In about early February 2012, Defendants stopped paying Ulabasamura for all of his hours worked.

107.   From about February 2012 to the present, Defendants paid Ulabasamura for only about 40 hours of straight time a week, even though Ulabasamura was working at least 55 hours a week.

108. During the Ulabasamura time period, Ulabasamura first signed in and out of his job on a sign-in/sign-out sheet and then after about February 2012 signed in and out using a finger scanner.

109. In about March 2012, Ulabasamura approached Santangelo, and complained about not being paid for all of his hours worked, and about not being compensated at time and one half for all of his hours worked over 40 in a workweek ("overtime wages").

110. In response to Ulabasamura's complaints, Santangelo stated that he would correct the payment error, and compensate Ulabasamura for his past owed wages.

111. Additionally, Santangelo stated that this problem would not occur in the future, and that Ulabasamura would be properly compensated for all of his hours worked, including overtime wages.

112. Therefore, in reliance of Santangelo's statements, Ulabasamura continued working his same hours, 6:00 a.m. to 5:00 p.m.

113. The long hours were necessary to complete Ulabasamura's daily tasks.

114. When Ulabasamura received his next check, Ulabasamura was again only paid for 40 hours, despite working at least 55 hours that week.

115. Shortly thereafter, Ulabasamura contacted Defendants' Human Resource Department ("HR") and complained about not being paid for all of his hours worked, and not being paid any overtime wages.

116. A representative from HR stated that she would be contacting Ulabasamura's director, Defendant Emond Manley ("Manley"), about Ulabasamura's complaints.

117. The next day at work, Manley called Ulabasamura into a meeting and told him that HR contacted Manley about Ulabasamura's wage complaints.

17

118.   Manley then told Ulabasamura that Ulabasamura should have come to Manley before contacting HR.

119.   Ulabasamura explained to Manley that prior to contacting HR, Ulabasamura made a complaint to Santangelo about not being paid wages for all of his hours worked, and not being paid overtime wages.

120.   In response, Manley stated that new rules were put in to place.

121.   Under the new rules, Defendants did not pay any overtime wages, unless there was a specific, special circumstance in which payment of overtime wages was approved.

122.   Manley then stated that all of Ulabasamura past unpaid overtime wages would be paid.

123.   Despite Manley's statement, to date, none of Ulabasamura's overtime wages have been paid.

124.   However, Ulabasamura generally still continues to work about 11 hours a day, from 6:00 a.m. to 5:00 p.m., because Ulabasamura needs to get all of his work done and it cannot be completed in 8 hours.

125.   Additionally, Ulabasamura continues to work without receiving wages, including overtime wages, for all of his hours worked  because Ulabasamura has bills and a life to maintain, and Ulabasamura knows that Ulabasamura will be terminated if Ulabasamura does not complete all of his daily tasks.

126.   Ulabasamura worked and continues to work efficiently during each day and does not take any meal breaks.

127.   Ulabasamura's daily duties and responsibilities account for all of the hours Ulabasamura worked and now works.

18

128.    In or around early July 2012, a new Executive Chef named Chef John (last name unknown) ("John") replaced Santangelo.

129.    Ulabasamura explained to John all of his duties and daily responsibilities and tasks.

130.    Additionally, Ulabasamura complained to John about not receiving payment for all of his hours worked, and not being paid any overtime wages.

131.    Ulabasamura stated to John that his daily responsibilities and tasks required Ulabasamura to work long hours beyond his work schedule.

132.    John stated that Ulabasamura was to work as many hours as necessary to get the job done.

133.    The next week Ulabasamura's schedule was changed to 7:00 a.m. to 3:30 p.m., Monday through Friday (8.5 hours a day).

134.    Ulabasamura tried to complete all of his tasks within the daily 8.5 hours Ulabasamura was scheduled to work.

135.    However, Ulabasamura was, and continues to be unable to get his job done in 8.5 hours per day based on his extensive responsibilities which remained the same.

136.    During the Ulabasamura time period, Ulabasamura's job responsibilities did not require any independent judgment, and Ulabasamura did not have the power to hire or fire employees.

137.    During the Ulabasamura time period, there were at least 40 other food service employees who did similar work as Ulabasamura and also had no power to hire or fire employees.

138.   There is high turnover rate applicable to food service employees as most of the employees stay employed for only a few months.

139.   Upon information and belief, there are at least 40 other food service employees employed by Defendants during the last six years, who worked more than forty (40) hours in a workweek, and were not paid for all of their hours worked, and did not receive time and one half for their hours worked over forty (40) in a workweek.

140.   During the Ulabasamura time period, Ulabasamura and these other similar food service employees worked for Defendants, but were not paid for all of their hours worked, and were not paid any overtime pay and were not paid for all their unused vacation days.

141.   Ulabasamura knows that others like him were not paid for all of their hours worked, because Ulabasamura spoke with similar employees, including but not limited to Hassan Moustafa, Frank Rivela, and Mark Ines, who all complained that they had not been paid for all their hours worked and had not been paid for all their vacation days.

142.   Throughout the Ulabasamura time period, Defendants have likewise employed other individuals, like Ulabasamura, in positions as food service employees.

38.   Throughout the Ulabasamura time period, such individuals have worked long hours for Defendants, yet the Defendants have likewise failed to pay them wages for all hours worked, and overtime wages for all hours worked over 40 in a workweek and have also failed to paid them for unused vacation time.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT

143.   Plaintiffs repeat and reallege each and every allegation of the preceding

20

paragraphs hereof with the same force and effect as though fully set forth herein.

144.    At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

145.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

146.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

147.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b). The named Plaintiffs' written consents are attached hereto and incorporated by reference.

148.    At all relevant times, the Defendants had a policy and practice of refusing to pay its employees wages for all of their hours worked, and overtime wages for all hours worked over 40 in a workweek.

149.    As a result of the Defendants' willful failure to compensate its employees, including Plaintiffs and the Collective Action members overtime wages for all of their hours worked over 40 in a workweek, the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

150.    As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

21

151.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

152.    Due to the Defendants' FLSA violations, Plaintiffs and the Collective Action Class are entitled to recover from the Defendants, their unpaid overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW

153.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

154.    At all relevant times, Plaintiffs and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

155.    Defendants willfully violated Plaintiffs' rights, and the rights of the members of the Class, by failing to pay them wages, including overtime wages, in violation of the New York Labor Law and its regulations.

156.    The Defendants' New York Labor Law violations have caused Plaintiffs and the members of the Class, irreparable harm for which there is no adequate remedy at law. Due to the Defendants' New York Labor Law violations, Plaintiffs and the members of the Class are entitled to recover from Defendants their unpaid wages, unpaid overtime wages, reasonable attorneys' fees, and/or costs and disbursements of the action, pursuant to New York Labor Law § 663(1).

## THIRD CLAIM FOR RELIEF
## BREACH OF CONTRACT

157.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

158.    Plaintiffs and the members of the Class entered into employment contracts with Defendants, under which Defendants agreed to pay Plaintiffs and members of the class hourly wages including overtime wages for all their hours worked over forty in a workweek, paid vacation days, and sick days, which both would be paid at the end of the year if accrued and not used.

159.    Plaintiffs and the members of the Class fully performed all their obligations to work as food service employees under the employment contracts.

160.    Defendants breached the employment contracts by failing to pay wages and/or paid vacation days and/or sick days to Plaintiffs and the members of the Class as required by the contracts.

161.    Defendants' breach has caused Plaintiffs and members of the Class to suffer damages.

162.    As a result of Defendants' breach of the employment contracts Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all other similarly situated

Collective Action Members and members of the Class, respectfully request that this Court grant

the following relief:

a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2)

and (3) on behalf of the members of the Class and appointing Plaintiffs and their

counsel to represent the Class;

b. Designation of this action as a collective action on behalf of the Collective Action

Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all

similarly situated members of an FLSA Opt-In Class, apprising them of the

pendency of this action, permitting them to assert timely FLSA claims in this

action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and

appointing Plaintiffs and their counsel to represent the Collective Action

members;

c. A declaratory judgment that the practices complained of herein are unlawful

under the FLSA and the New York Labor Law;

d. An injunction against the Defendants and their officers, agents, successors,

employees, representatives and any and all persons acting in concert with it, as

provided by law, from engaging in each of the unlawful practices, policies and

patterns set forth herein;

e. An award of unpaid wages, and unpaid overtime wages and unpaid vacation and

sick time, due under the FLSA and the New York Labor Law and the New York

common law;

f.  An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and the New York Labor Law;

g.  An award of prejudgment and postjudgment interest;

h.  An award of costs and expenses of this action together with reasonable attorney's and expert fees; and

i.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      March 21, 2013

LAW OFFICE OF WILLIAM COUDERT RAND

_____

William Coudert Rand, Esq.
*Attorney for Plaintiffs*, Individually and on
Behalf of All Persons Similarly Situated
488 Madison Avenue, Suite 1100
New York, New York 10022
Tel: (212) 286-1425
Fax: (646) 688-3078
Email: wcrand@wcrand.com

25

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of ___Compass Group USA, Inc., Steve Santangelo & Emand Hanley___

To pay me minimum wages and/or overtime wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

_Hassan Moustafa_
Printed Name

_[Signature]_
Signature

_3/5/13_
Date

7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _Compass Group USA, Inc., Steve Santangelo, & Emond Manley._ To pay me minimum wages and/or overtime wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

_AbubakarUlesa Soumra_
**Printed Name**

**Signature**

_03/05/13_
**Date**

7